AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of
A black and rose gold iPhone

Case No. 22-5158MB

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before 4/28/22 *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: April 14, 2022 @ 12:20pm   _____
                                                    *Judge's signature*

City and state: Phoenix, Arizona        Honorable DEBORAH M. FINE, U.S. Magistrate Judge
                                         *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black and rose gold iPhone (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at the Drug Enforcement Administration located at 3439 E. University Drive, Phoenix, AZ 85034.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

2

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of
A black and rose gold iPhone

Case No. 22-5158MB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 843(b) | Use of Communication Facility to Commit a Federal Drug Felony |

The application is based on these facts:

**See attached Affidavit of Special Agent Jessica Earle**

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA D. Matthew Conti

_Applicant's Signature_

Jessica Earle, Drug Enforcement Administration
_Printed name and title_

Sworn to telephonically and signed electronically.

Date: April 14, 2022 12:20 pm

_Judge's signature_

City and state: Phoenix, Arizona

Honorable DEBORAH M. FINE, U.S. Magistrate Judge
_Printed name and title_

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black and rose gold iPhone (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at the Drug Enforcement Administration located at 3439 E. University Drive, Phoenix, AZ 85034.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Special Agent Jessica Earle, being first duly sworn, hereby deposes and states as follows:

### I.     INTRODUCTION AND AGENT BACKGROUND

1.     Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.     Your Affiant, Jessica M. Earle, is a criminal investigator of the United States within the meaning of Title 18, United States Code Section 2510(7) – an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code Section 2516.

3.     Your Affiant has been a Special Agent with the Drug Enforcement Administration (DEA) since June 2019 and is currently assigned to the Phoenix Field Division (PFD) DEALERS Group 16. Prior to becoming a Special Agent, your Affiant attended the DEA's sixteen-week training academy located in Quantico, Virginia. While at the DEA training academy, your Affiant received formal training in investigative techniques, drug identification, and laws pertaining to drug investigations. Your Affiant has also received on-the-job training from senior agents regarding the manner in which drugs are trafficked and best practices for law enforcement to counter the drug trafficking threat.

4.     Prior to your Affiant's employment with the DEA as a Special Agent, your Affiant was employed by the DEA as an Intelligence Analyst for twelve years, beginning in 2006. For the first five years, your Affiant served as the senior strategic analyst covering Mexican Drug Trafficking Organizations (DTO) at DEA Headquarters. From 2011 to

2014, your Affiant served as a strategic intelligence analyst stationed at DEA's Mexico City Country Office in Mexico City, Mexico. Then, from 2014 to 2019, your Affiant served as the senior strategic analyst covering DEA's Far East region, including China, as well as the Acting Unit Chief for DEA's Global Strategic Intelligence Unit at DEA Headquarters.

5. In the course of conducting drug investigations, your Affiant has personally interviewed informants and persons involved in the distribution of illegal drugs. In addition, your Affiant has provided surveillance in support of federal investigations that utilized court-authorized interceptions of wire and electronic communications. Your Affiant has also consulted with other experienced investigators concerning the practices of drug trafficking organizations and the strategies used to investigate them.

6. Your Affiant is familiar with the methods used in drug-trafficking operations and the drug-trafficking patterns employed by DTOs. During your Affiant's tenure with the DEA, your Affiant has become knowledgeable of the methods and the language typically used by DTOs. Your Affiant knows that drug-traffickers often require the use of one or more communication facilities to coordinate times, places, and procedures for importing, concealing, and distributing controlled substances, and for arranging the disposition of drug-trafficking proceeds. Your Affiant knows that the use of telephones is essential in maintaining communication with sources of supply, brokers, customers, financiers, transporters, dealers, money couriers, and stash house operators

7. In preparing this affidavit, your Affiant has conferred with other Special Agents and other law enforcement officers, who share the opinions and conclusions stated herein. Furthermore, your Affiant has personal knowledge of the following facts or has learned them from the individuals mentioned herein.

8. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II. BASIS FOR PROBABLE CAUSE

9.   On April 5, 2022, law enforcement personnel were conducting surveillance in the area of Weldon Street and 15th Avenue in Phoenix, Arizona. During their surveillance, they observed a suspected drug transaction at an apartment complex located at 3615 N. 15th Avenue, Phoenix, Arizona 85015. The individual who appeared to have transferred something during the transaction was wearing a black hat, white shirt, and dark pants. This individual was later identified as Jesus Osvaldo Aguilar Rosas (hereinafter "AGUILAR"). In addition, it was later discovered that AGUILAR had transferred a small plastic baggie of blue M/30 pills (which your Affiant suspects contain fentanyl) weighing approximately 40 grams, and a second small plastic baggie containing crystal shards of methamphetamine weighing approximately 40 grams.

10.   Following the transaction, AGUILAR was observed walking into the apartment complex located at 3615 N. 15th Avenue. At approximately 2:50 p.m., law enforcement agents observed AGUILAR depart the gate of the same apartment complex and meet with the same individual. AGUILAR was again wearing a black hat, white shirt, and dark pants. AGUILAR was carrying a blue bag, which he placed into the individual's vehicle. Believing that a drug transaction had occurred, investigators approached and detained AGUILAR. The investigators examined the contents of the blue bag and found approximately .39 kilograms of blue pills, which your Affiant suspects contain fentanyl, and three burrito shaped objects of approximately 1.58 kilograms of methamphetamine.

11.   At the time of his detention, a concealed 9mm Browning handgun and the SUBJECT CELLULAR PHONE was found in AGUILAR's possession.

12.   Once in custody, AGUILAR stated that he was currently living in apartment number 22 at the apartment complex located at 3615 N. 15th Avenue. This was the same apartment complex investigators had seen him enter and exit from earlier that day. AGUILAR further stated that no one else was present in the apartment.

3

13. AGUILAR told investigators that there were "some things" and a second firearm inside the apartment. He then consented and signed a consent form allowing investigators to enter both the apartment and AGUILAR's vehicle, a Kia Forte bearing Arizona license plate CNX5865.

14. At approximately 3:15 p.m., investigators entered apartment unit 22 located at 3615 N. 15th Avenue. Unit 22 is a small bottom floor one-bedroom apartment, with one bathroom, a kitchen, a laundry room, and a front living room. It faces north towards W. Weldon Avenue.

15. There was no furniture present in the living room. Instead, investigators found three large car and truck tires with large pieces missing from the side walls leaned up against the wall. Your Affiant suspects that the tires were used to smuggle drugs into the apartment.

16. The kitchen floor was littered with hundreds of plastic wrappings, consistent with the burrito shaped plastic wrapping material that AGUILAR had delivered during the second transaction observed earlier that afternoon. On the kitchen counter investigators found a digital scale. Investigators also found a yellow car-key tag in which the year, make, model, and color matched the car associated with the car-key that was found in AGUILAR's pocket at the time of his arrest.

17. In the bedroom, there was single air mattress on the floor with a blanket. Investigators also observed an unzipped black roller suitcase with the panel open. The suitcase contained men's clothing and several bundles of U.S. currency. An Apple iWatch was also found next to the air mattress. Investigators called the number they believed was used to coordinate the narcotics transactions they had witnessed earlier that day and the iWatch began to ring. A bank card with the name "Osvaldo A." and a house key for the residence were also found on the floor near the air mattress.

18. Investigators also found the following items inside the apartment:

4

**Kitchen area**

- 14 large plastic bags with blue M/30 pills (suspected fentanyl) under the sink
- 4 bags with blue M/30 (suspected fentanyl) pills in a kitchen drawer
- 2 small baggies of white powder fentanyl in a bottom kitchen drawer
- 2 burritos of methamphetamine in a bottom kitchen drawer
- 2 small burritos with "CH" of heroin in a bottom kitchen drawer
- 2 baggies and 1 brick with "CH" of white powder fentanyl in a bottom kitchen drawer
- 9 burritos with "G" of methamphetamine in a utility closet
- 2 black bricks with "AP" of cocaine
- A black handgun, without a serial number in a top kitchen drawer

**Bedroom area**

- 26 burritos with "P" of methamphetamine on the closet floor
- 1 black brick with "AP" of cocaine on the closet shelf
- 2 large clear bags with loose methamphetamine in the closet
- 40 grams of marijuana under the air mattress
- $34,171.50 U.S. currency banded up in the aforementioned suitcase
- A green ledger on the floor near the air mattress

**Laundry area**

- A black bag containing white powder in a safe on the floor

19. The total amount and weight of the suspected narcotics found in the apartment were:

- Approximately 150,000 blue M/30 pills weighing approximately 16.96 kilograms
- Approximately 1.46 kilograms of fentanyl powder (inclusive of packaging)

- Approximately 20.29 kilograms of methamphetamine (inclusive of packaging)
- Approximately 3.25 kilograms cocaine (inclusive of packaging)
- Approximately 1.01 kilogram of heroin (inclusive of packaging).

20. The methamphetamine, cocaine, powdered fentanyl, and heroin were field tested. All the samples tested positive, respectively.

21. A search of AGUILAR's vehicle (a brown/gray 2010 Kia Forte) was also conducted and law enforcement located additional men's clothing consistent with what was found in the apartment.

22. The SUBJECT CELLULAR TELEPHONE (a T-Mobile-serviced black and rose gold iPhone) was seized incident to arrest and is currently in storage at the Drug Enforcement Administration located at 3439 E. University Drive, Phoenix, AZ 85034. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of the Drug Enforcement Administration.

### III. ITEMS TO BE SEIZED

23. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

24. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

   a. Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of

telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking and money laundering activities. Therefore, evidence related to drug trafficking activity and money laundering activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

25. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

## IV. **DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE**

26. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

27. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

    a. Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was

achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b. Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

28. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of

the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

      a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b. As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating

to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

    c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

    d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.    Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

    29.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

    30.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/ / /

/ / /

/ / /

## V. CONCLUSION

31. Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

_____
Special Agent Jessica Earle
Drug Enforcement Administration

Subscribed to electronically and sworn to telephonically this __14__ day of __April__, 2022. @ 12:20 pm

_____
HONORABLE DEBORAH M. FINE
United States Magistrate Judge